IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THERMOLIFE INTERNATIONAL, LLC,

        Plaintiff,                  15cv0273
                                               **ELECTRONICALLY FILED**

        v.

D.P.S. NUTRITION, INC., ET AL.,

        Defendants.

**MEMORANDUM ORDER OF COURT RE: PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' THIRD AFFIRMATIVE DEFENSE (INEQUITABLE CONDUCT) AND TO DISMISS IFORCE'S COUNTERCLAIM COUNTS I, II, V AND VI UNDER FED.R.CIV.P. 12(B)(6) (DOC. NO. 60)**

**I.    Introduction**

This case centers on allegations of direct and indirect infringement of five United States Patents for Amino Acid Compositions and Betaine Compounds held by Thermolife International, LLC ("Thermolife" "Plaintiff")[1] by seven online vitamin and supplement businesses ("Defendants"). Doc. No. 5. Defendants have separately filed Answers to Plaintiff's First Amended Complaint, each of which includes twelve affirmative defenses. Doc. Nos. 38-43. In its Answer, Defendant iForce has also included six Counterclaims against Thermolife, four of which also name Thermolife's President and Chief Executive Officer Ron Kramer ("Kramer"). Doc. No. 38. Plaintiff has filed an Answer to Counts III and IV of iForce's Counterclaims. Doc. No. 59.

Plaintiff moves this Court to strike Defendants' affirmative defense of inequitable conduct pursuant to Federal Rule of Civil Procedure 12(f) and dismiss iForce's Counterclaim

---

[1] Plaintiff is alternatively identified as "Thermolife" and "ThermoLife" in the pleadings. The Court will refer to Plaintiff as "Thermolife," as first identified in Plaintiff's Amended Complaint. Doc. No. 5.

Counts I, II, V, and VI pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. No. 60. Plaintiff's Motion is based upon the alleged conclusory nature of the affirmative defense and counterclaims and the improper reliance of the Counterclaims against Kramer on piercing the corporate veil. Id. This matter is fully briefed and ripe for disposition. Doc. Nos. 60-61, 63, 68.

## II. Statement of Applicable Facts

As noted, at issue are Defendants' affirmative defense of inequitable conduct and iForce's Counterclaim Counts I, II, V, and VI. The affirmative defense is set forth in each of the Defendants' Answers and reads as follows:

> Third Affirmative Defense
> (Inequitable Conduct)
> 3. Plaintiff's claims are barred because they are unenforceable pursuant to the doctrine of inequitable conduct.

Doc. Nos. 38-43, pg. 26. Defendant iForce's Answer is the only Answer that includes factual averments to support this affirmative defense. Doc. No. 38.

In relevant part, and taken as true from iForce's Answer solely for the purposes of this Memorandum Order, the following is a recitation of Thermolife's actions prior-to and following the issuance of the patents-in-suit, and the actions of its President, Chief Executive Officer, and sole owner, Ron Kramer:

Thermolife purports to be a leading manufacturer of sports nutrition products and supplements, but the company does not manufacture any product it sells to customers, and the majority of its products have been unavailable for purchase for several years. Doc. No. 38, ¶¶

24-27.[2] The company has a unity of interest and ownership with Kramer, such that the individual and company do not exist as separate personalities. Id. at ¶ 30.

Patents held by Thermolife, including the patents-in-suit, are unenforceable, in part because they are barred by Thermolife's inequitable conduct. Id. at ¶ 37. This conduct included the intentional, knowing, and willful failure to disclose material prior art during prosecution of the '531 patent to the United States Patent and Trademark Office by Kramer and others involved in the prosecution of the application of the '531 patent. Id. at ¶¶ 37-46. Kramer and others continue to fail to disclose prior art to the United States Patent and Trademark Office during pending appeal proceedings within the agency. Id. at ¶¶ 48-53. Further, the patents-in-suit are improperly dependent on the invention of amino acids, which was rejected as patentable by the Patent and Trademark Office. Id. at ¶¶ 54-55.

Thermolife operates primarily to sue or threaten to sue manufacturers and retailers in the sports nutrition and supplement industry. Id. at ¶ 29. Thermolife has instituted dozens of lawsuits against dietary supplement manufacturers and retailers, including 117 cases in 2013. Id. at ¶ 31. Thermolife has not obtained a verdict or judgment against a defendant in any of these cases. Id. at ¶ 32. These lawsuits have been instituted "for the sole purpose of coercing settlements and licensing agreements and have, as a result made money from the coercion." Id. at ¶ 33.

In this case, the company did not perform an adequate pre-suit investigation or improperly ignored the inevitable finding of the investigation that the patents-in-suit are invalid. Id. at ¶¶ 58-59. Therefore, the company knew or should have known that its patents are invalid. Id. at ¶¶ 60, 62. Thermolife has made false and misleading statements in regard to iForce's

---

[2] The paragraphs cited in iForce's Answer reference the paragraphs contained from page 29 onwards, not the original numbered paragraphs from Plaintiff's Amended Complaint that are included in pages 1 through 28 of iForce's Answer. Doc. No. 38.

alleged infringement of the patents-in-suit, and filed this lawsuit "with the intent to wrongfully extract money from iForce and iForce's customers, to defame iForce, and to wrongfully interfere with iForce's business and business relationships." Id. at ¶ 61. To date, iForce has sustained damages in the form of lost sales and profits, lost business opportunities, damage to its reputation, potential legal fees, and litigation costs to defend its customers against claims by Thermolife. Id. at ¶ 65.

### III. Standard of Review

#### A. Federal Rule of Civil Procedure 12(f)

Under Fed. R. Civ. P. 12(f), the Court may, on its own or on a timely motion made by either party, "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *Simmons v. Nationwide Mutual Fire Ins. Co.*, 788 F.Supp.2d 404, 407 (W.D. Pa. 2011), *citing McInerney v. Moyer Lumber & Hardware, Inc.*, 244 F.Supp.2d 393, 402 (E.D. Pa. 2002).

While "a court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)," a motion to strike is "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues in the case." *Thornton v. UL Enterprises, LLC, et al.*, 2010 WL 1004998, *1 (W.D. Pa. Mar. 16, 2010). "Striking some or all of a pleading is [] considered a drastic remedy to be resorted to only when required for the purposes of justice." *Tennis v. Ford Motor Co.*, 730 F.Supp.2d 437, 443 (W.D. Pa 2010).

Motions to strike must be decided on the pleadings alone, and the court should consider the liberal pleading standards of Rule 8 and the lack of a developed factual record at this early stage of litigation. *Simmons*, 788 F.Supp.2d at 407.

**B. Federal Rule of Civil Procedure 12(b)(6)**

In considering a Rule 12(b)(6) motion, Federal Courts require notice pleading, as opposed to the heightened standard of fact pleading. Fed. R. Civ. P. 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007), *quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957).

Building upon the landmark United States Supreme Court decisions in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the United States Court of Appeals for the Third Circuit explained that a District Court must undertake the following three steps to determine the sufficiency of a complaint:

> First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013) (citation omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claims presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013). "While legal conclusions can provide the

framework of a Complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 664.

This Court may not dismiss a Complaint merely because it appears unlikely or improbable that Plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly*, 550 U.S. at 563, FN.8. Instead, this Court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* at 556. Generally speaking, a Complaint that provides adequate facts to establish "how, when, and where" will survive a Motion to Dismiss. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 212 (3d Cir. 2009).

In short, a Motion to Dismiss should not be granted if a party alleges facts, which could, if established at trial, entitle him/her to relief. *Twombly*, 550 U.S. at 563, FN.8.

IV. **Discussion**

Thermolife contends that the Court should strike the affirmative defense of inequitable conduct because it is conclusory and does not meet the Federal pleading standards and iForce's Counterclaims Counts I, II, V, and VI should be dismissed because they fail to state a claim upon which relief can be granted. Additionally, as to Kramer, Plaintiff contends that the Counterclaims improperly rely on piercing the corporate veil and the Court lacks personal jurisdiction over Kramer. The Court will address these arguments in turn.

A. **Thermolife's Motion to Strike Affirmative Defense of Inequitable Conduct**

Claims of inequitable conduct before the United States Patent and Trademark Office ("PTO") must be pled with particularity. *Exergen Corp v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009); *see also Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 315, FN 9 (3d. Cir. 2007), *citing Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Solutions*, 482

F.3d 1347, 1356 (Fed.Cir. 2007). This heightened standard protects legitimate patent owners pursuing their patent rights and necessitates that a defendant plead facts to establish the who, what, when, where, why, and how the alleged material misrepresentation or omission committed before the PTO occurred. *Exergen*, 575 F.3d at 1328. This measure requires that a defendant include sufficient allegations from which a court may reasonably infer that an individual knew of the withheld material information or the falsity of the material representation and withheld or misrepresented this information with the specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1328-29.

As noted, only Defendant iForce sets forth factual averments in their Answer, some of which support an affirmative defense of inequitable conduct. Doc. No. 38. Thermolife contends that these averments are deficient in several respects, including who deliberately withheld or misrepresented information, what the withheld references were, and how the withheld information would have been used by the examiner in assessing patentability. Doc. No. 61, pgs. 4-6. The Court conducts its inquiry mindful that a motion to strike is disfavored and a Court will generally not grant such relief unless the material at issue "bears no possible relationship to the controversy and may cause prejudice to one of the parties." *Simmons*, 788 F.Supp.2d at 407, citing *Hanover Ins. Co. v. Ryan*, 619 F.Supp.2d 127, 133 (E.D.Pa. 2007).

A review of the factual averments to support this affirmative defense reveal that, at this early stage, there are sufficient allegations to infer that specific individuals knew of material information that was withheld or knew of the falsity of a material representation and withheld or misrepresented the information in an attempt to deceive the PTO. Specifically, iForce sets forth the necessary perimeters of:

- Who: Kramer, Alexander Nikolaidis, and the law firm of Booth Udall Fuller, PLC (¶ 38);

7

- When/where: during the pendency of patent-in-suit '531 and re-examination of the '074 patent (¶ 41);
- What: the "Barger reference" (¶ 42), which impacts the patents-in-suit;
- Why/How: the Barger reference was important to the patentability of the claim and would have been considered; the information was not disclosed in an effort to deceive the PTO, and ultimately, in an attempt to wrongfully extract money from iForce and its customers (¶¶ 42-61)

The cumulative result of these factual averments is sufficient for this Court (and Plaintiff) to be on notice of the affirmative defense of inequitable conduct.

However, as noted by Thermolife, each of the Defendants, apart from iForce, have failed to pled any facts to support their affirmative defense of inequitable conduct. As to these Defendants, the Court cannot determine the sufficiency of factual averments that are not contained in their Answers and do not appear to incorporate averments contained within iForce's Answer. Therefore, Thermolife's Motion to Strike Third Affirmative Defense (Inequitable Conduct) will be GRANTED IN PART AND DENIED IN PART. The Court will strike the Third Affirmative Defense, inequitable conduct, as pled by the following Defendants: D.P.S. Nutrition, Inc.; A1 Supplements, Inc.; Muscle and Strength, LLC; Suppz Inc.; and Supplement Direct Ventures, Inc.

### B. Thermolife's Motion to Dismiss Counterclaim Counts I, II, V, and VI

*i. Count I (Unfair Competition in Violation of Lanham Act)*

The Lanham Act, as codified in 15 U.S.C. § 1125, provides that any person who uses a false or misleading representation of fact, in connection with any goods or services, which is "likely to cause confusion, or to cause mistake" shall be liable by any person who believes that he or she "is likely to be damaged by such act." 15 U.S.C. § 1125(a). iForce's Counterclaim for violation of the Lanham Act centers on actions taken before the PTO and a demand letter, dated February 10, 2015, which is attached to iForce's Answer, and, in which Thermolife sets forth the

alleged infringing conduct and demands that iForce immediately cease infringing activity, desist with future infringement, and comply with Thermolife's additional requirements. Doc. No. 5-6.

iForce alleges that Thermolife's demand letter, which was sent to iForce's customers throughout the United States, contained false descriptions of iForce and its products, which were made in bad faith in an effort to deceive iForce's customers and profit Thermolife, and has injured iForce's reputation, ability to compete in the industry, and profits. Doc. No. 5-6; Doc. No. 38, ¶¶ 66-81.

The Court recognizes a true patent owner's right to enforce its patents. However, this right does not insulate those who attempt to use patents as a weapon to extract money from and injure competitors. The Court has no opinion as to whether Thermolife is a true patent owner or a "patent troll" because its inquiry is confined to the pleadings at this stage. As set forth in iForce's Answer, Thermolife is not a true patent owner because it knew or should have known that its patents-in-suit were unenforceable. These allegations set Thermolife apart from other patent owners who seek to protect their intellectual property and, if proven at trial, necessitates a finding that claims against iForce contained in the demand letter were made in bad faith because Thermolife sought to enforce its rights in regards to patents that it knew were not enforceable both by sending the unfounded demand letter and through its pattern of abusive litigation. These actions, combined with Thermolife's alleged knowledge that the contents of the letter were untrue and/or were designed to deceive customers, is distinct from the factual averments necessary to support an affirmative defense of inequitable conduct, and meets the requirement of actual knowledge on Thermolife's part that the patents were invalid, unenforceable or not infringed, or there is no reasonable basis on the patent holder's part to believe the patents-in-suit

could be enforced. *Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1352-53 (Fed. Cir. 1999). Therefore, Thermolife's Motion to Dismiss Counterclaim Count I will be DENIED.

> ii. *Count II (Tortious Interference with Business Relations and Potential Business Relations)*

In Counterclaim Count II, iForce alleges that Thermolife tortuously interfered with its business relationships by threatening to sue and suing iForce's customers for selling iForce's products, filing these meritless and fraudulent lawsuits in bad faith, and defaming iForce, with the intent to harm iForce's business. iForce alleges that these actions resulted in harm to its relationships with existing third-party customers and potential customers. Doc. No. 38, ¶¶ 82-88.

As noted by Thermolife, and as agreed to by iForce, a claim for tortious interference requires a showing of bad faith. *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1374 (Fed. Cir. 2004). Thermolife contends that iForce's factual averments demonstrate Thermolife's "good faith enforcement of valid patent claims against competitors, including iForce and its customers." Doc. No. 61, pg. 11. Herein again are the fundamental disagreements underlying iForce's Counterclaims and Thermolife's objections thereto; whether Thermolife believed that it had valid patents and, if not, whether Thermolife pursued legal action against iForce despite its knowledge that there was no legal recourse do so, in an effort to secure financial settlements/verdicts against iForce. The Court need not determine the veracity of iForce's factual averments at this stage, just as it is inappropriate to undertake any weighing of Thermolife's infringement claims. It is sufficient to find that if the factual averments contained in the Answer are established, iForce may have a cognizable counterclaim for tortious interference. Therefore, Thermolife's Motion to Dismiss Counterclaim Count II will be DENIED.

### iii. Counts V and VI (Violations of § 2 of the Sherman Act-Walker Process and Handgards Claims)

In Counts V and VI, iForce sets forth its Counterclaims under the Sherman Act for a *Walker Process* and *Handgards* Claim. Doc. No. 38, ¶¶ 97-111. In support of these claims, iForce alleges that Thermolife and Kramer made material misrepresentations and omissions to the PTO in regard to the patents-in-suit, which would not have issued without these misrepresentations and omissions, and these actions were knowingly and willingly made with the deceptive intent to control prices, destroy competition, and accomplish monopolization, which has a probability of success. Id. at ¶¶ 97-104.

Thermolife moves this Court to dismiss both Counterclaims and contends that the *Walker Process* claim fails because the requisite threshold showing of intent higher than inequitable conduct and the allegations of fraud are not pled with particularity and, in respect to the *Handgards* claim, iForce has failed to demonstrate that Thermolife or its agents knew that any of the asserted patent claims were invalid. Doc. No. 61, pgs. 12-15. Thermolife also contends that Counterclaim Counts V and VI must be dismissed because iForce has failed to set forth any facts showing that Thermolife has the required element of sufficient market power. Id. at pgs. 14-15.

As noted by iForce, a *Walker Process* antitrust claim requires a demonstration of: (1) a false representation or deliberate omission of a fact material to patentability; (2) made with the intent to deceive the patent examiner; (3) on which the examiner justifiably relied in granting the patent; (4) the patent would not have been granted but for the misrepresentation or deliberate omission; and (5) injury. *Walker Process Equip., Inc. v. Food Mach. & Chemical Corp.*, 382 U.S. 172 (1965); *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070-71 (Fed. Cir. 1998). A *Handgards* claim requires allegations of objectively baseless litigation, which has

11

been used as an anticompetitive weapon to directly interfere with a competitor's business relationships. *Handgards, Inc. v. Ethicon, Inc.*, 601 F.2d 986 (9th Cir. 1979).

Thermolife's Motion invites this Court to impose a higher burden on iForce than is proper in determining the merits of a motion to dismiss. At this early stage, the Court's inquiry is not whether iForce will ultimately prevail on these Counterclaims. Rather, the proper determination is whether the matters have been properly pled. A review of the Answer reveals that iForce has sufficiently pled these Counterclaims and the elements of an antitrust claim based upon its allegations of deliberate actions by Thermolife and Kramer during proceedings before the PTO and the effect these actions have had on iForce, as well as the high risk of an anticompetitive impact on competition and pricing.

Therefore, Thermolife's Motion to Dismiss Counterclaim Counts V and VI will be DENIED.

*C. Thermolife's Motion to Dismiss Kramer as a Party*

iForce names both Thermolife and Kramer, the company's President, Chief Executive Officer, and sole owner, in Counterclaims Counts I, II, V, and VI. Thermolife is alleged to be incorporated in Arizona, with a place of business in California. Doc. No. 38, ¶ 2. Kramer is a resident of the State of Arizona. Id. at ¶ 4. To establish potential liability against Kramer, iForce must demonstrate that Thermolife is the "alter ego" of Kramer. *Standage v. Standage*, 147 Ariz. 473, 476 (Ariz. Ct. App. 1985).

The following facts are relevant to the Court's determination of the sufficiency of iForce's inclusion of Kramer in the Counterclaims as an alter ego of Thermolife:

- Kramer is one of two individuals listed as inventors of the '531 patent (Doc. No. 38, ¶ 38);
- Thermolife does not manufacture any product and two of its nine products offered for sale on its website are available (Doc. No. 38, ¶¶ 25-27);

12

- Thermolife is operated primarily to sue or threaten to sue sports nutrition and supplement manufacturers and retailers (Id. at ¶ 29);
- It is a sham corporation used by Kramer to function as a patent troll (Id. at ¶ 30);
- Kramer has written statements indicating that he will profit from the proceeds of patent litigation filed against competitors (Id. at ¶ 35 "Now thanks to Dan Pierce, Mr. Gayspari [sic] and company are going to have to pay me more damages for the sales of all Super Pump Max from the time we put them on notice until the time this new case settles . . . for infringing on yet 2 more patents owned by Thermolife . . . ."); and
- There is a unity of interest and ownership between Thermolife and Kramer such that they do not have separate personalities (Id. at ¶ 30)

The Court's determination at this juncture is not whether Thermolife and Kramer operate as a singular entity such that Kramer is not entitled to the protection of incorporation, but, whether iForce's allegations are sufficient such that, if proven to be true, a reasonable factfinder could conclude that Thermolife and Kramer are only distinct in name. After a complete review of iForce's pleading, the Court finds that iForce's Counterclaims should proceed through discovery against both Thermolife and Kramer because there is a reasonable expectation that discovery will lead to further evidence to support a conclusion that Thermolife and Kramer are not distinct legal entities. iForce has also pled sufficient facts to establish specific personal jurisdiction over Kramer due to his actions that were "purposefully directed" to the Commonwealth of Pennsylvania. Doc. No. 38, ¶¶ 7-8; *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). Therefore, Thermolife's Motion to Dismiss Kramer as an individual party will be DENIED.

**V.    Order**

AND NOW, this 12th day of August, 2015, IT IS HEREBY ORDERED THAT Plaintiff's Motion to Strike Defendants' Third Affirmative Defense (Inequitable Conduct) and to Dismiss iForce's Counterclaim Counts I, II, V, and VI (Doc. No. 60) is **GRANTED IN PART AND DENIED IN PART**, as follows:

1. Thermolife's Motion to Strike Defendants' Third Affirmative Defense (Inequitable Conduct) is **GRANTED** as to Defendants D.P.S. Nutrition, Inc.; A1 Supplements, Inc.; Muscle and Strength, LLC; Suppz Inc.; and Supplement Direct Ventures, Inc. The third affirmative defense pled by these Defendants is **STRICKEN**;

2. Defendants D.P.S. Nutrition, Inc.; A1 Supplements, Inc.; Muscle and Strength, LLC; Suppz Inc.; and Supplement Direct Ventures, Inc. may file an Amended Answer as to the Third Affirmative Defense (Inequitable Conduct) on or before August 21, 2015;

3. Thermolife's Motion to Strike Defendants' Third Affirmative Defense (Inequitable Conduct) is **DENIED** as to Defendant iForce;

4. Thermolife's Motion to Dismiss Counterclaims Counts I, II, V, and VI under Fed.R.Civ.P. 12(b)(6) is **DENIED**; and

5. The case shall proceed according to the Case Management Order, filed on July 13, 2015 (Doc. No. 54).

        s/ Arthur J. Schwab
        Arthur J. Schwab
        United States District Judge

cc:    All Registered ECF Counsel and Parties